No. 26,992.

THE STATE OF KANSAS, *Appellee*, v. W. L. TURNER, *Appellant*.

OPINION DENYING A REHEARING.

Appeal from Norton district court; WILLARD SIMMONS, judge. Opinion denying a rehearing filed October 9, 1926. (For original opinion of affirmance see *ante,* p. 364, 247 Pac. 427.)

*W. E. Mahin, J. F. Bennett,* both of Norton, *A. W. Relihan, T. D. Relihan* and *J. T. Reed,* all of Smith Center, for the appellant.

*Charles B. Griffith,* attorney-general, *William A. Smith,* assistant attorney-general, *Robert W. Hemphill,* county attorney, and *H. R. Tillotson,* of Lenora, for the appellee.

The opinion of the court was delivered by

MASON, J.: A conviction upon a charge of murder having been affirmed on appeal, a motion for a rehearing is presented, in which some of the questions considered in the original opinion are reargued, and some new matters are urged.

The motion is devoted largely to an attack upon the veracity of Gideon Hardin, the Nebraska farmer who testified that on the night of September 7, 1922, he saw a car near the place where the body of Jack Newkirk was found. After the affirmance of the judgment, counsel for the defendant employed a Denver detective and W. R. Lathrop, a former sheriff of Smith county, Kansas, to investigate Hardin. As a part of the motion for a rehearing an affidavit of Lathrop is filed to the effect that he had proposed to Hardin to enter with him into a scheme to procure $10,000 by fraud; that Hardin consented and in the course of their discussion of the matter told him his testimony at the Turner trial had been false; that the story of his having seen the car was suggested to him by one A. J. Taylor, who in effect promised him a part of the reward he expected to get. It is stated in the motion that Taylor was appointed as a deputy sheriff of Norton county to work on the Turner case and the case was turned over to him so far as the sheriff's office was concerned.

Obviously this affidavit has no bearing upon the question whether error was committed in the trial of the case. Counsel for defendant recognize this, but urge that it proves an injustice to have been done and that the court for that reason should set the judgment aside and

Criminal Law, 17 C. J. p. 199 n. 95.

order a new trial, as was done, for instance, in *Caldwell v. Modern Woodmen,* 90 Kan. 175, 133 Pac. 843, where after judgment had been rendered in favor of the beneficiary in a life insurance policy the insured turned up alive. We do not, however, regard the affidavit as establishing the falsehood of Hardin's testimony with such approach to certainty as to warrant that procedure. It is controverted by an affidavit of Hardin, adhering to his former story and giving an entirely different version of the conversation between him and Lathrop. The state also files affidavits tending to show, and if true showing that the story which Hardin told on the witness stand did not originate with Taylor. The situation presented is that of the reversal of a judgment being asked because of additional disputable evidence being offered in this court relating to the credibility of a witness, a practice which is not recognized by the statute, and which if followed would go far to prevent any finality with respect to judgments in criminal cases. Other affidavits offered by the defendants are unavailing for like reasons.

A rehearing is asked also on the ground that this court misunderstood the evidence in a material matter. It is true a statement in the original opinion requires correction. It was there said in effect that Hardin testified the car which followed him on the night referred to, and which when it turned back he saw to be without the bundle previously seen on its running board, was then 200 feet away. Hardin said 200 yards, and the use of the term 200 feet was due to a clerical error. The court, however, did not and does not regard what the witness said about the distance as vital to the upholding of the verdict. It may be true, as contended by the defense, that at 200 yards it would have been impossible to tell whether there was a bundle on the running board. But the witness' estimate of the distance was not necessarily accurate. He testified that he did see that the bundle was no longer on the running board, and that the car was then probably about 200 yards away—less the few steps he had taken toward it. Granting that the two statements were inconsistent, it does not follow that the first one was wrong. The probabilities in this regard were of course for the determination of the jury and trial judge, but it seems natural to assume it was the estimate rather than the actual fact in which the testimony erred. Estimates of time and distance are well known to be variable and unreliable. The language of the witness showed he was only ven-

State v. Turner.

turing a rough guess as to the distance. In his examination in chief he said, "As near as I can tell my truck stopped two or three telephone poles north of where the body was found." On cross-examination he said, "When I saw the car stopped behind me it was two or three telephone posts back of me, probably about 200 yards." His estimate of the distance at two or three telephone poles showed he was not undertaking to give the exact distance. Moreover, on the theory of the defense that the entire story was made up out of whole cloth, it would have been just as easy for the witness to have named a shorter and more plausible distance. The defendant's brief made no mention of Hardin having placed the distance at 200 yards; its only reference to the matter represented him as saying the distance was "about three telephone poles." Nor is the distance between the witness and the car commented upon in the brief as too great to admit of seeing whether the bundle was on the running board. In the state's brief Hardin is said to have given the distance as about 300 feet, a statement which remained unchallenged and which may have been intended as an interpretation of the witness' estimate of two or three telephone poles.

No testimony seems to have been offered at the trial about the phase of the moon, but in one of the affidavits filed by the state at this hearing it is said to have been practically full and nearly overhead, which seems to agree with the calendar. Hardin said the night was clear.

The credibility of Hardin has at all times been a vital point in the case. His story was brought out at the preliminary examination as well as at the trial, and we cannot think the belated attempt to impeach his testimony requires or warrants resort to any extraordinary procedure for the reopening of the issue of fact. There is, of course, no basis for the remotest suspicion of want of good faith on the part of counsel for the defense in connection with the new evidence or any other phase of the case. Their belief in the defendant's innocence has been manifest throughout. We cannot agree with their conclusions, however, and see in the case only disputed questions of fact upon which a full and fair hearing was had.

The motion for a rehearing is overruled.